218 So.2d 765 (1969)
In re the Matter of the Incompetency of Lomax SEALY.
No. K-205.
District Court of Appeal of Florida. First District.
February 13, 1969.
Yardley D. Buckman, Jacksonville, for appellant.
No appearance for appellee.
WIGGINTON, Chief Judge.
Lomax Sealy has appealed a judgment rendered by the County Judge's Court of Duval County finding him to be mentally incompetent, and from an order entered pursuant thereto committing him to the Superintendent of the State Hospital as Director of Mental Health, for detention, treatment, and care. The sole point presented by this appeal challenges the sufficiency of the evidence to support the adjudication of incompetency and order committing appellant to the state hospital.
Appellant is a white male 26 years of age and professes to be what is commonly referred to as a "hippie". During the past eight years he has been in and out of several universities, and at the time of the incompetency hearing was enrolled as a student in a beauty college in Jacksonville. While at one state university, he sought *766 emotional guidance from an out-patient clinic. Between attending sessions of college he worked sporadically but was unable to hold a position of employment for any appreciable length of time. In addition to his beliefs in love and nonviolence, appellant professed to be an atheist. His beliefs and personal conduct brought him into disagreeable conflict with his natural father who lived in Alabama, as well as his mother and her husband who lived in Jacksonville. Appellant returned from New York and took up residence in his mother's home at Jacksonville in order to be near a girl friend who had borne him an illegitimate child. He resented the attitude adopted by his mother and stepfather toward this child whose relationship they refused to recognize. At one time he either threatened or considered suicide, and on one or more occasions threatened bodily harm to his mother. One night when his mother and stepfather were out for the evening, he brought to their home as his date a Negro girl whom he had known for some time. When his parents returned home, his stepfather became incensed and ordered both him and the girl out of the house. A rather unpleasant altercation ensued in which appellant either shoved, pushed, or struck his stepfather, causing the latter to fall against a table and injure his head. Appellant was arrested on a criminal warrant charging him with trespass and assault, following which his mother filed in the County Judge's Court a petition alleging appellant to be incompetent and praying that an examination be made as to his mental condition as provided by law.
A committee of two medical doctors and one layman were appointed by the County Judge who made an examination of appellant and filed their written report in which they found that appellant was incompetent, the apparent cause being chronic schizophrenia. The committee found that appellant was suffering from hallucinations which were delusional, inappropriate affect, and dictatorial confusion. They found that he possessed propensities for using LSD and marijuana and that he had poor insight. The committee concluded that appellant required mechanical restraint to prevent him from self-injury or doing violence to others.
At the hearing held before the court for the purpose of determining appellant's competency, the latter was represented by counsel furnished by the Legal Aid Association of Duval County. No members of the examining committee appeared to testify in person, but their written report was filed in evidence before the court. Appellant's mother and stepfather testified to the facts hereinabove set forth and expressed their opinion that appellant was insane or mentally ill and in need of psychiatric treatment. Other than the scuffle between appellant and his stepfather on the night he was ordered out of the home, there was no evidence that appellant ever actually injured himself or committed acts of violence toward any other person.
Appellant called as a witness in his behalf a qualified psychologist who gave expert testimony concerning his examination and observation of appellant, and his professional opinion as to appellant's mental condition. This witness testified that he found appellant to be sane and rational in all respects; that he was mentally competent; and there were no indications that appellant would do violence either to himself or others. He defined a mentally competent person as one who is in contact with reality, knows where and who he is, what he is doing, and is able to relate to the world around him in a rational fashion. He expressed the opinion that appellant's condition should be more accurately categorized as a character disorder rather than schizophrenia, manic or any of the psychotic sources. This witness, in response to questions propounded on cross-examination, testified that from his examination it was his opinion that although some of the beliefs espoused by appellant represented philosophies with which many would disagree, and that his conduct and manner of *767 speech would be considered by some to be socially inappropriate, that nevertheless these tendencies are not indicative of psychological incompetencies.
Appellant testified at length in which he admitted an inability to conform his beliefs and standard of values to those shared by his father, his mother and stepfather, which inability resulted in considerable friction between them and himself. He denied any suicidal tendencies or propensity to do violence to anyone. He frankly admitted that his behavior from time to time was adolescent in character and palpably unwise, but attributed it primarily to the fact that he had been encouraged to depend too greatly upon his parents for financial support, and had never fully assumed the responsibility of caring for his own needs. He steadfastly denied that he needed psychiatric care but expressed a willingness to accept psychiatric help only as an out-patient and on his own terms.
Following the hearing the County Judge entered his final judgment which found appellant to be mentally incompetent by reason of chronic schizophrenia, his particular hallucinations being delusional, inappropriate affect, dictatorial, and his propensities being confusion, poor insight, and use of marijuana. An order was entered upon the judgment directing the sheriff to deliver appellant to the superintendent of such state hospital as the Director of Mental Health might designate. In pursuance of this order appellant was taken into custody and placed in the Northeast Florida State Hospital for observation, treatment, and care. After a period of 59 days a competency discharge signed by three members of the medical staff of the hospital and approved by the superintendent was issued, finding appellant to be mentally competent and discharging him from the hospital. After receipt of such discharge by the County Judge, and no objections being made thereto, a mandatory order of restoration of competency was entered by the court on June 12, 1968. It is from the judgment of incompetency and the order of commitment that this appeal is taken.
As noted above, the only medical proof of appellant's incompetence is the statement contained in the written report filed by the examining committee consisting of two medical doctors in which they diagnosed appellant's condition as chronic schizophrenia. The report did not attempt in any manner to classify the type of schizophrenia of which they found appellant to be suffering. These medical experts did not testify at the hearing and were not subject to cross-examination by appellant's counsel on this vital question. Such general diagnosis is in direct conflict with the opinion expressed by the expert produced by appellant who did appear and testify in person at the hearing, and was subjected to intensive cross-examination by the court and petitioner's counsel.
In the case of In re Pickles' Petition[1] this court had for consideration an appeal from a judgment of incompetency in which the sufficiency of the evidence to support the judgment was questioned. The diagnosis of appellant's condition by the examining committee was that of chronic schizophrenia. Neither in their written report, nor in their testimony at the incompetency hearing, did the medical members of the committee attempt to classify the type of schizophrenia of which the alleged incompetent was suffering. In reversing the judgment appealed, this court said:
"Maloy in his treatise entitled Nervous and Mental Diseases quotes Obernoff as stating:
"`* * * As time went on everyone recognized that the borderline * * * between schizophrenia and the neuroses (nervous diseases) is a fine one, that probably everyone is a bit schizoid as well as neurotic, and that it is the degree of constancy that determines whether *768 the patient becomes schizophrenic in the pathologic (pertaining to disease) sense. The normal person has transitory schizoid episodes. The deduction from the above is, first, that in borderline cases  in cases in which there is not yet a preponderance of universally accepted symptoms of dementia praecox, there is often present a possibility of error in diagnosis; second, that much is yet to be learned about the disease; and third, that many persons apparently normal sitting in judgment in a case of insanity may not be entirely sound in mind themselves.' Thus, it is apparent that a diagnosis of schizophrenia standing by itself (which is not classified as to type) is insufficient to support an adjudication of incompetency within the purview of Florida Statutes 394.22, F.S.A. Weighing the evidence presented to the trial judge in light of the foregoing principles of law, we are compelled to conclude that he applied erroneous legal concepts in deciding that Muriel Pickles was incompetent as contemplated by Florida Statutes 394.22, F.S.A."
In the Pickles case, supra, this court held that in incompetency proceedings "* * * the determinative question is not whether the person is suffering from a mental illness, is in need of psychiatric treatment, is in need of counseling, is staying out of trouble, or is leading a normal life. The pertinent question presented to the judge in cases such as this is whether the alleged incompetent is suffering from a mental illness to such an extent that he is incapable of caring for himself, or managing his property or is likely to dissipate or lose his property or become the victim of designing persons. * * *"
The evidence in the record before us reveals that appellant engaged in profitable employment from time to time during which periods he was capable of providing for his own financial needs. It is true that he frequently called on his parents for financial help, primarily when he was attending college, and each call was met with an affirmative response from the indulgent parent. There is no evidence that appellant mismanaged, dissipated or lost any property of which he was possessed, or ever became the victim of designing persons.
As we view the record in this case it seems apparent that partially because of a broken home appellant adopted a way of life which caused him to entertain philosophies and beliefs foreign to those of his parents. He lived the life of a typical "hippie", at times scrounging for a living, indulging in the use of hallucinogenic drugs and engaging in free love with members of the opposite sex in the sincere belief that his way of life was preferable to that of his parents and the great majority of those comprising our society. He took advantage of his parents' love by making monetary demands on them to which he was not necessarily entitled, and accepting their largess instead of providing for his own needs by pursuing gainful employment. His demands upon his parents became burdensome, and his personal appearance, conduct and beliefs offensive, embarrassing and objectionable. The fact that he elected to lead the kind of life, entertain beliefs and engage in conduct which was offensive, repulsive, and objectionable to others does not necessarily indicate mental incompetence, nor does it justify confining him in a mental institution primarily in order to alleviate the financial drain upon his parents and the embarrassment he was causing them.
The record before us leaves little doubt but that appellant's mother, in petitioning the court for an adjudication of incompetency, was motivated by a sincere desire to save appellant from a life of waste and degradation, and by medical treatment to have him restored as a useful and respected member of society. Appellant's judicial sanity having been heretofore restored by court order, the only apparent purpose of this appeal is to remove the stigma of incompetency from his record, and although the evidence of appellant's personal conduct and beliefs is sufficient to raise a substantial *769 question as to his mental stability, we think the weight of the evidence militates against the conclusion that he is legally insane.
We therefore conclude that the evidence is insufficient to support the judgment of incompetency under which appellant was committed to the state hospital. The judgment appealed is accordingly reversed and the cause remanded with directions that an order be entered vacating, setting aside, and holding for naught the judgment appealed.
JOHNSON and SPECTOR, JJ., concur.
NOTES
[1] In re Pickles' Petition, (Fla.App. 1965) 170 So.2d 603, 613, 614.